For the reasons assigned, the judgment is affirmed at appellant's costs.

O'NIELL, C. J., concurs in the decree.

## WHITTON v. UNITED GAS PUBLIC SERVICE CO.

### No. 5802.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1939.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellant.

W. H. Todd, Jr., of Bastrop, for appellee.

DREW, Judge.

This is a compensation suit in which the plaintiff is asking judgment for 65% of his weekly wages for a period of not more than 400 weeks, less the amount previously paid, for permanent disability brought about by an accident in which he was involved while in defendant's employ and while acting within the scope and course of his employment.

Defendant admits practically all the allegations of plaintiff's petition and sets up as a defense that at the time compensation payments ceased, which was two years and two weeks after the date of the accident, plaintiff had fully recovered.

Whether plaintiff had fully recovered or not is the only question now to be determined.

The lower court, after hearing the testimony, seeing the plaintiff, rendered the following opinion:

"Plaintiff, a steel construction worker, because of the breaking of a rod upon which he was standing, fell about 12 feet upon a water pump which stood about two feet high and had several large bolts in its top. He struck upon the small of his back; was carried off upon a mattress and taken to the hospital, where he stayed thirteen days before removal to his home, where he remained in bed until the latter part of October. The accident happened August 22, 1934. The uncontradicted testimony of his wife, his neighbors and his family physician is that he improved to the extent of getting around with the aid of a stick, but that he cannot stoop or do work of any reasonable character. The case was tried June 15, 1937. He was paid compensation at the rate of $19.50 per week for a period of 106 weeks, the last payment being made August 29, 1936. Since that time his wife has supported the family by working in the sewing room of the WPA.

"Plaintiff can be denied further compensation only on the finding to the satisfaction of the court that he had fully recovered at the time of the last payment and has malingered since. Defendants offer no lay evidence of this; that plaintiff did work about the place, hunted, fished or did anything else but spend most of his time in bed. The injury claimed would naturally result from such a serious fall. There is not the slightest evidence of falsification or exaggeration on the part of plaintiff's lay witnesses. They were hardly cross-examined.

"Dr. McKain, an experienced physician from Monroe, states that plaintiff is disabled by a bone fracture in the back, partial dislocation, arthritis and inflammation, as indicated by four or five examinations and X-rays. Dr. T. L. Rawls, a young practitioner, testifies to the same effect.

"Dr. J. N. Jones, plaintiff family physician, testifies that his X-ray shows a dislocation of the fifth lumbar vertebra, and a slight fracture of the sacrum. That he has examined him often; and that he complains of pain and is unable to work.

"This strong case is met by the testimony of an array of physicians and radiologists of the highest standing, in whom the court has the utmost confidence and respect. Their testimony is that plaintiff suffered no back injury whatever. That his muscular disability should have cleared up in two or three months. Coincidentally, they all find an abnormality in the lumbar region of plaintiff's back. They say that this is congenital and in no wise due to the accident.

"There is thus presented a situation wherein the large preponderance of the medical testimony is in direct conflict with the uncontradicted, entirely reasonable and equally sincere lay testimony.

"In Rogers v. Union Indemnity Company, La.App., 146 So. 505, 507, a like preponderance did not prevail, the court holding:

"'The opinion of experts is not always binding on the court, particularly when at variance with positive testimony based on facts; and, when conflicting opinions exist between the experts, as appears in the instant case, the court is compelled to consult the other evidence in the record for a proper solution of the issue submitted for decision.' Bearman v. Fuller Construction Company, La.App., 148 So. 720; Hennen v. Louisiana Highway Commission, La.App., 178 So. 654.

"In Succession of Ford, 151 La. 571, 92 So. 61, 64, we find:

" 'This court has the greatest respect for the physicians who have testified in this case, and has carefully weighed their testimony, along with that of all the other witnesses in the case, but, however weighty opinion evidence may be, and however plausibly it may be supported by theoretical reasoning, in courts of justice such opinions must yield when opposed to facts.' Pitre v. Guidry, La.App., 147 So. 767; Ruling Case Law, Vol. 2, p. 573.

"In Wall v. Aetna Casualty & Surety Company et al., La.App., 167 So. 903, the testimony of the attending physician prevailed over that of others based upon isolated examinations made at the request of defendant.

"In this case it is not vital that a fracture or a dislocated vertebra be proven. It is shown that plaintiff suffered a violent blow in the small of the back directly over an abnormal and deformed region well calculated to cause disability. That he has since been unable to work and subject to severe pain when any effort is attempted. We think he is entitled to recover.

"There is accordingly judgment for plaintiff, Diamond P. Whitton, against defendants, United Gas Public Service Company and the Fidelity & Casualty Company of New York, in solido, for compensation for a period of disability not to exceed 400 weeks, at the rate of $19.50 per week, beginning August 22, 1934, with 5% per annum interest on each weekly installment from its due date until paid, subject to a credit for the 106 weeks already paid. Defendants to pay all costs. Expert fees are fixed at $25.00 each and the fees of plaintiff's attorney at 20% of the amount recovered."

Defendants' medical testimony, which is all the testimony it offered, is based entirely upon the numerous X-ray pictures taken at different times of plaintiff's spine and back. All of the doctors admitted that plaintiff has at this time an abnormal back. The space between the fourth and fifth lumbar vertebrae on the left and right sides is different. On the left side it is half an inch and on the right it is one inch. The whole pelvis is out of line and there is a difference in the distance in the line between the hip bone and the border of the fifth lumbar vertebra. There is a scar one and one-half inches long on plaintiff just over the fifth and part of the fourth lumbar vertebrae, which clearly indicates where he struck the nuts extending above the concrete on which he fell. The sacrum, or key bone of the spine, is low as compared to the ilium on each side. The upper edge of the fifth lumbar vertebra is on a line with the sacrum. Defendant's specialists call it a sacralization of the fifth lumbar vertebra, that is, a dropping down between the ilium on each side of the spine. The laminae, the two bones that come out of the fifth lumbar vertebra, fail to connect, resulting in a partial biceps spine. Plaintiff's medical experts are of the opinion this condition was caused by the fracture or fractures received when he fell. All of defendant's medical experts are positive it is a congenital condition and they are likewise of the opinion that the X-ray pictures disclose nothing that would have at any time incapacitated plaintiff and that he was never entitled to any compensation, if the only evidence of injury had been the X-ray pictures.

It is an evident fact that plaintiff was seriously injured and recognized to be by defendant when it paid him compensation for two years and two weeks, and for nearly a year after the doctors who testified in the case had examined him and made many X-ray pictures of his back. In its answer it contends that plaintiff had fully recovered on August 29, 1936, and not before. It does not contend that it paid compensation to plaintiff through error. X-ray pictures are not infallible and are susceptible of different readings, as is shown in this case and all others of like nature that come before us, and to take as conclusive testimony based on them against other testimony showing only facts and injury, would, to our minds, be dangerous and often lead to a grave injustice.

It is certain that the force of the blow received in the fall was over the present abnormal condition existing between the fourth and fifth lumbar vertebrae. That is the exact spot plaintiff continuously complains of pain. Whether the condition shown to be there now is congenital or not, it is certain to our minds that he received a severe injury in that locality of the back. He fell in a stooped or sitting position a distance of at least twelve feet, and the small of his back landed on a nut or some other iron object extending one or two inches above the object upon which he fell. He was so badly hurt that he could only be removed to the sanitarium by rolling him onto a mattress and four men carried the mattress. Thirteen days later he was removed from the sanitarium to his home in the same

manner, where he was confined to his bed for a period of nearly two months.

Plaintiff was an agile, hard-working man up to the time of the injury and was earning $30 per week. Since that time he has not worked, spends most of his time around the house and a great portion of it in bed. Prior to the cessation of compensation payments by the defendant, his wife had never worked, but since that time she has been forced to go to work in the sewing-room of the WPA, at a small wage, in order to earn money for the family to exist upon. To find that plaintiff is a malingerer and not working when he is able to work, under these conditions, would brand him as the lowest type of the human race, and there is nothing in the testimony to justify us in doing so.

We are convinced that plaintiff has made out his case and the judgment of the lower court is correct. It is therefore affirmed, with costs.